IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>             Plaintiff,<br><br>vs.<br><br>ALDEN HARMEN CHEE,<br><br>             Defendant. | MEMORANDUM OPINION AND ORDER<br><br><br><br>Case No. 2:05 CR 773 |

During an interview with investigators at a police station, Defendant Alden Chee made incriminating statements that were later memorialized in a letter of apology written by Mr. Chee in the presence of the investigators. Mr. Chee now argues that his rights, as articulated in Miranda v. Arizona, 384 U.S. 436 (1966), were violated during the police station interview. Additionally, Mr. Chee argues that any incriminating statements that he made during that interview, as well as his confession, were involuntary. On those grounds, Mr. Chee moves to suppress all incriminating statements made during that interview, as well as the letter of apology.

The court concludes that Mr. Chee was not in custody during the interrogation, and therefore the investigators were not obligated to read him his Miranda rights. Additionally, while the investigators utilized subterfuge in their efforts to obtain a confession, that subterfuge did not amount to undue police coercion and did not render Mr. Chee's statements, or his confession, involuntary.

**Facts**

Early into his investigation of an allegation of rape in the Navajo Nation, Special Agent Matt Larson began to suspect Mr. Chee of the crime.  (Transcript of April 13, 2006  Evidentiary Hearing [hereinafter "Tr."] 6.)  Desiring to speak with Mr. Chee, Agent Larson made several attempts to contact him at his residence in Monument Valley, Utah.  (Id.)  After learning that Mr. Chee had a daughter who lived in Blanding, Utah, Agent Larson went to her apartment and left his business card along with a note asking Mr. Chee to call him.  (Id.) Mr. Chee eventually contacted Mr. Larson and agreed to meet him at the Blanding City Police station the following day.  (Id. at 7.)

Agent Larson did not mention the rape investigation when attempting to contact Mr. Chee.  (Id. at 20-21.)  Rather, Agent Larson indicated that he wanted to speak to Mr. Chee about an unrelated incident  involving a firearm that Mr. Chee had discovered in a vehicle sold at a government auction.  (Id. at 19-21.)  Mr. Chee had reported his find to the Blanding City Police months earlier, and Agent Larson endeavored to assure Mr. Chee that their discussion would concern that firearm.  (Id. at 21.)

The day of the interview, Mr. Chee and his wife walked to the Blanding City Police station.  (Id. at 8.)  He was greeted in the lobby by Agent Larson, who was accompanied by Henry Lee, a criminal investigator for the Navajo Nation Department of Public Safety.  (Id.) Both Agent Larson and Criminal Investigator Lee were in plain clothes with no visible firearms or handcuffs.  (Id. at 10.)

After introductions were made, Agent Larson informed Mr. Lee that there was a private location where they could talk.  (Id. at 9.)  Agent Larson, Criminal Investigator Lee, and Mr. Chee then entered the office of Mike Halliday, the chief of the Blanding City Police Department

and closed the door. (Id. at 9, 29.) Criminal Investigator Lee sat behind Chief Halliday's desk and Agent Larson sat in front of the desk in a chair partially facing that occupied by Mr. Chee. (Id.) The three men were the only people in the office. (Id.)

Before Agent Larson engaged Mr. Chee in conversation, he first informed Mr. Chee that he was not under arrest, did not have to talk with the investigators, and was free to leave at anytime. (Id. at 12.) Although Mr. Chee was the sole suspect in the ongoing rape investigation and was, unbeknownst to him, at the police station to discuss that crime, Agent Larson informed Mr. Chee that he was "not in any trouble." (Id. at 6, 12.)

Agent Larson began the interview by talking with Mr. Chee about the firearm he had discovered in the government-auctioned vehicle. (Id. at 11.) After discussing that topic for five to ten minutes, Agent Larson changed the subject to the rape investigation. (Id. at 13.) He told Mr. Chee that the grandmother of the victim was very upset about the situation. (Id.) Mr. Chee responded that he was aware that the victim's grandmother was upset and that he had spoken with her about the situation. (Id.) Mr. Chee stated that the victim's grandmother was upset because he had entered the victim's bedroom and awakened her. (Id. at 24.) Agent Larson then pressed Mr. Chee to tell him exactly what happened that night. (Id. at 14.) Initially, Mr. Chee denied that he had sex with the victim. (Id.) But when Agent Larson told Mr. Chee, falsely, that the investigators had obtained DNA evidence from the scene, Mr. Chee admitted that he had forcible sex with the victim. (Id. at 14-15.)

Following that admission, Agent Larson asked Mr. Chee if he would be willing to write an apology letter to the victim's grandmother. (Id. at 15.) Mr. Chee agreed to write the letter. (Id.) Agent Larson told Mr. Chee that the letter should accurately describe what happened

between himself and the victim.  (Id.)  Mr. Chee then wrote the letter, in which he admitted to having sex with the victim against her will.  (Id.; Gov. Ex. 1.)

Shortly after the letter of apology was complete, Agent Larson concluded the interview. (Id. at 15-16.)  The entire encounter lasted about one hour.  (Id. at 16.)  Back in the lobby of the police station, Agent Larson asked Mr. Chee if he would submit to a DNA swab.  (Id. at 18.)  Mr. Chee complied and then left the station with his wife.  (Id.)

## Analysis

Mr. Chee argues that all incriminating statements obtained by investigators at the Blanding City Police station must be suppressed because (1) the investigators failed to inform Mr. Chee of his Miranda rights before questioning him, and (2) his confession was involuntary. The court concludes that Mr. Chee was not in custody during the interview and therefore the investigators were not required to inform Mr. Chee of his Miranda rights.  Additionally, the court concludes that Mr. Chee's confession was voluntary.

**I.     Mr. Chee's Miranda Rights Were not Violated Because He Was Not in Custody During the Interview**

As stated by the Tenth Circuit, "Miranda requires that procedural safeguards be administered to a criminal suspect prior to 'custodial interrogation.'"  United States v. Perdue, 8 F.3d 1455, 1463 (10th Cir. 1993) (quoting Miranda, 384 U.S. at 444).  Before Miranda is implicated in any given situation, two requirements must be met: (1) the individual being questioned must be "in custody"; and (2) the questioning must amount to "interrogation," as those terms have been defined in relevant case law.  Id.

It is undisputed that Mr. Chee was not read his Miranda rights at any point during his interview at the Blanding City Police station.  The United States also concedes that the

questioning of Mr. Chee by Agent Larson amounted to "interrogation."  Therefore, the only question left to be answered is whether Mr. Chee was "in custody" when questioned by Agent Larson.

The United States Supreme Court has held that one is in custody for Miranda purposes if that individual is "deprived of . . . freedom of action in any significant way."  384 U.S. at 444.  "The Court has also stated that the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'"  Perdue, 8 F.3d at 1463 (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curium).  To determine if a person was in custody for Miranda purposes, courts assess whether "a reasonable [person] in the suspect's position would have understood his situation . . . as the functional equivalent of formal arrest."  Berkemer v. McCarty, 486 U.S. 420, 442 (1984).  The record evidence indicates that a reasonable person in Mr. Chee's situation would not have considered his or her freedom curtailed to a degree associated with formal arrest.

The facts of this case are strikingly similar to those in Oregon v. Mathiason, 429 U.S. 492 (1977) (per curium).  In Mathiason, an officer investigating a burglary made multiple attempts to contact a suspect.  Id. at 493.  The officer eventually left his card at the suspect's apartment with a note asking the suspect to contact him "to discuss something."  Id.  The suspect contacted the officer the next day and agreed to meet him that afternoon at the state patrol office.  Id.  The officer greeted the suspect when he arrived and led him into an office, closing the door after entering.  Id.  The officer told the suspect that he was not under arrest and was free to leave at anytime.  Id.  The meeting resulted in a confession from the suspect.  Id.  The suspect later sought to suppress his confession, alleging that it was obtained in violation of his Miranda rights.

The Supreme Court held that the suspect's Miranda rights were not implicated during the interrogation because the suspect was not in custody. Id. at 495. The Court noted that the suspect "came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a 1/2-hour interview respondent did in fact leave the police station without hindrance." Id. Based on those facts, the Court concluded that the suspect "was not in custody or otherwise deprived of his freedom of action in any significant way." Id.; see also Beheler, 463 U.S. at 1125 (holding that a suspect was not in custody for Miranda purposes when the suspect voluntarily accompanied police to the station house and was told that he was not under arrest).

Mr. Chee seeks to distinguish Mathiason and Beheler on the grounds that Agent Larson misled Mr. Chee concerning the purpose of the interview. According to Mr. Chee, he arrived at the Blanding City Police station voluntarily only because he anticipated that the meeting was not connected to the rape investigation. Further, Mr. Chee argues that the officers' deception on that point raised such significant credibility concerns that Mr. Chee reasonably believed that Agent Larson was not telling the truth when he stated that Mr. Chee was not under arrest and was free to leave at anytime.

Mr. Chee's attempt to portray the situation as one in which a suspect is unwittingly lured to a police station only to watch investigators spring a custodial trap is not supported by the record. Although it is undisputed that Agent Larson focused his attention on the rape investigation soon after he began to question Mr. Chee, the record indicates that the tone of the interview remained calm and conversational throughout. While Mr. Chee was undoubtedly surprised by the turn the interview took, that unexpected turn alone was insufficient to alter a non-custodial setting into one fairly characterized as custodial.

Mr. Chee arrived at the Blanding City Police station under his own power to attend an interview he helped schedule. Although the questioning quickly veered into unexpected territory, Mr. Chee had been told only minutes before that he was not under arrest and was free to leave at anytime. In fact, at the conclusion of the interview, Mr. Chee shook hands with the investigators and left the station on foot with his wife. "[T]he requirement of warnings [is not] imposed simply because the questioning takes place at the station house, or because the questioned person is one whom the police suspect." Mathiason, 429 U.S. at 495. Mr. Chee's freedom was not sufficiently restrained to render him "in custody" for the purposes of Miranda. Therefore, his claim that his incriminating statements were obtained in violation of Miranda must be rejected.

**II.     The Absence of Coercive Police Activity Renders Mr. Chee's Incriminating Statements Voluntary**

Mr. Chee argues that, even if his Miranda rights were not violated, his statements should nevertheless be suppressed because they were the product of police coercion and therefore were involuntary. "To be admissible, a statement or confession made by a defendant to law enforcement officers must be voluntary." United States v. Aranda-Flores, 313 F. Supp. 2d 1188, 1200 (D. Utah 2004).

When assessing whether statements were voluntary, "the test is whether, considering the totality of the circumstances, the government obtained the statements by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." United States v. Erving L., 147 F.3d 1240, 1248-49 (10th Cir. 1998). The Tenth Circuit has identified the following factors as worthy of consideration when making a voluntariness assessment: "(1) the age, intelligence, and education of the defendant; (2) the length of any

detention; (3) the length and nature of the questioning; (4) whether defendant was advised of [his or] her constitutional rights; and (5) whether the defendant was subjected to physical punishment." Id. at 1249.  The Supreme Court has held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" Colorado v. Connelly, 479 U.S. 157, 167 (1986).

In this case, Mr. Chee is an adult and there is no evidence indicating that he suffers any mental disability or lacks education.  The interview at the Blanding City Police station lasted approximately an hour and the questioning centered on an ongoing rape investigation in which Mr. Chee was the sole suspect.  While the investigators did not advise Mr. Chee of his rights, he was told that he was not under arrest and was free to leave at any time.  Mr. Chee was not subjected to physical punishment of any kind.

Mr. Chee claims that his statements were involuntary because they were the product of repeated police deception.  It is beyond dispute that Agent Larson deceived Mr. Chee into arriving at the police station in the first place, told Mr. Chee that he was not in trouble, and also falsely indicated that officers had recovered DNA evidence from the scene.  But courts have consistently upheld the use of deceptive interrogation tactics so long as those tactics are not unduly coercive.  See, e.g., Frazier v. Cupp, 394 U.S. 731, 739 (1969) (false statement about comments made by a coconspirator did not render confession involuntary); Lucero v. Kerby, 133 F.3d 1299, 1311 (10th Cir. 1998) (false statement that officers recovered suspect's fingerprints in victim's house did not render confession involuntary); cf. Holland v. McGinnis, 963 F.2d 1044, 1051 (7th Cir. 1992) ("[A] lie that relates to a suspect's connection to the crime is the least likely to render a confession involuntary.").  But see United States v. Lopez, 437 F.3d 1059, 1064-65

(10th Cir. 2006) (interrogator's indication that suspect would receive fifty-four fewer years of imprisonment if he confessed was sufficient to overbear the will of the suspect).

Acknowledging that the weight of authority allows law enforcement significant leeway during interrogations, Mr. Chee concedes that "if the officers had merely lied . . . about the supposed presence of DNA evidence, . . . the legal standards applicable would require a finding that his confession was voluntary." (Reply Memo. in Re Mot. to Suppress 6.)  But Mr. Chee argues that the deceptions, considered in total, amounted to impermissible coercion.

The deceptions at issue in this case are not the type that would cause a person's will to be overborne.  The first two deceptions identified by Mr. Chee occurred before questioning even began and were not of the type that would render a confession unreliable.  See United States v. Crawford, 372 F.3d 1048, 1060-61 (9th Cir. 2004) (confession voluntary even though investigators induced suspect to come to FBI office using trickery).  Further, "[i]t is well-settled that a confession is not considered coerced merely because the police misrepresented to a suspect the strength of the evidence against him." Clanton v. Cooper, 129 F.3d 1147, 1158 (10th Cir. 1997).  Finally, Mr. Chee was not deceptively offered any promise of leniency in exchange for his confession or cooperation and was not threatened with any penalty if he did not confess. Even considering the totality of the circumstances, the investigators did not unduly coerce Mr. Chee into making incriminating statements.

## **Conclusion**

Mr. Chee was not in custody when questioned by Agent Larson.  Further, although investigators did deceive Mr. Chee about the reason for the interview, stated that he was not in trouble, and lied about the state of the evidence against him, those actions were not so coercive

that Mr. Chee's statements must be suppressed as involuntary. Therefore, Mr. Chee's Motion to Suppress is DENIED.

DATED this 15th day of August, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge