IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALDEN HARMAN CHEE,<br><br>Defendant. | ORDER AND MEMORANDUM DECISION DENYING MOTION FOR COMPASSIONATE RELEASE<br><br>Case No. 2:05-CR-773-TC |

Prisoner Alden Harman Chee moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), asking the court to reduce his twenty-one-year sentence in the custody of the United States Bureau of Prisons (BOP) to time served. To date, he has served approximately thirteen years of that sentence. He bases his motion on fear that his age and medical condition make him particularly susceptible to the COVID-19 virus, creating an unacceptable risk of serious physical harm or death should he become infected in prison.

This court agrees with both parties that Mr. Chee has satisfied his burden of showing extraordinary and compelling reasons to release him. But the court finds that the balance of sentencing factors set forth in 18 U.S.C. § 3553(a) does not warrant his release. Accordingly, his motion is denied.

1

**FRAMEWORK FOR COMPASSIONATE RELEASE ANALYSIS**

Mr. Chee brings his motion under 18 U.S.C. § 3582, as amended by the First Step Act[1] (often referred to as the compassionate release statute). According to the statute, the court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that … extraordinary and compelling reasons warrant such reduction ... and that such a reduction is consistent with applicable policy statements by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The factors under 18 U.S.C. § 3553(a) include the nature of the crime, the defendant's characteristics and history, the danger to the public, and the sentencing range. The defendant bears the burden of establishing that compassionate release is warranted under the statute. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Jackson, — F. Supp. 3d —, No. 1:19-cr-347 (TNM), 2020 WL 3402391, *2 (D.D.C. June 19, 2020), appeal filed, No. 20-3046; United States v. Erickson, No. 2:17-CR-591 DB, 2020 WL 4732125, at *3 (D. Utah Aug. 14, 2020) (unpublished).

Before Congress passed the First Step Act, only the Bureau of Prisons (BOP) could bring a motion under § 3582 requesting that the court reduce a prisoner's sentence. Now the court may consider the issue either upon a motion from the BOP or "upon motion of the defendant after the defendant has fully exhausted all administrative rights" with the BOP. Id. § 3582(c)(1)(A). If the BOP has not filed a motion on the defendant's behalf, the defendant, to be eligible for the court's consideration of his motion for release under Act, must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

defendant's facility, whichever is earlier[.]" Id.

As noted above, the statute requires that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). That phrase has given rise to disagreement about the court's discretion to define "extraordinary and compelling reasons."

The statute does not define "extraordinary and compelling reasons." But the United States Sentencing Commission (USSC) defined it before Congress passed the First Step Act, when Congress mandated that the USSC, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, <u>shall describe what should be considered extraordinary and compelling reasons</u> for sentence reduction, including the criteria to be applied and a list of specific examples…." 28 U.S.C. § 994(t) (emphasis added).

Following the mandate, the USSC, in the United States Sentencing Guidelines (USSG), issued that policy statement in USSG 1B1.13, which describes the circumstances allowing a court, upon motion by the BOP, to reduce a defendant's term of imprisonment. The Policy Statement requires a finding that "[e]xtraordinary and compelling reasons warrant the reduction" or that "the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" USSG 1B1.13(1)(A)–(1)(B). In the Commentary Application Notes, the USSC defines "extraordinary and compelling reasons" in terms of the defendant's (A)

3

medical condition,[2] (B) advanced age,[3] (C) family circumstances,[4] or (D) other reasons.[5] USSG 1B1.13 Commentary Application Notes 1(A)–(D). The Policy Statement also calls for a conclusion that "[t]he defendant is not a danger to the safety of any other person in the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG 1B1.13(2). And, along similar lines, the Policy Statement requires the court to balance the § 3553(a) factors.

The Policy Statement has not been amended since the First Step Act was passed, so the USSC has not yet weighed in on the change. This court has held, in a non-COVID-19 case, that the Policy Statement does not curtail its discretion to determine what circumstances are extraordinary and compelling under § 3582. In United States v. Maumau, this court

> join[ed] the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide Mr. Maumau with relief, even if his situation does not directly fall within the Sentencing Commission's current policy statement. Under the First Step Act, it is for the court, not the Director of the Bureau of Prisons, to determine whether there is an "extraordinary and compelling reason" to reduce a sentence.

---

[2] The "Medical Condition" category applies when the defendant is (1) "suffering from a terminal illness," (2) "suffering a serious physical or medical condition," (3) suffering a serious functional cognitive impairment," or (4) "experiencing deteriorating physical or mental health because of the aging process," and the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13 Commentary Application Note 1(A)(i)–(ii).
[3] The "Age" category requires that "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." USSG 1B1.13 Commentary Application Note 1(B).
[4] "Family Circumstances" consist of "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children," or "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG 1B1.13 Commentary Application Note 1(C).
[5] The "Other Reasons" catch-all provision simply says, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C.)" USSG 1B1.13 Commentary Application Note 1(D).

No. 2:08-cr-758-TC, 2020 WL 806121, *4 (D. Utah Feb. 18, 2020), stayed pending appeal, No. 20-4056 (10th Cir. June 1, 2020). In this and other districts, courts have reached the same conclusion when addressing motions raising COVID-19-related reasons for release.

> Since the onset of the COVID-19 pandemic, many courts "have agreed that [extraordinary and compelling] reasons exist in cases involving defendants whose serious underlying health conditions place them at an elevated risk of infection and death from COVID- 19 while in custody." United States v. Lopez, No. 18-CR-2846 MV, 2020 WL 2489746, at *2 (D.N.M. May 14, 2020) (unpublished). Of the courts that have reached such a conclusion, several "have based their finding on the Sentencing Commission's catch-all provision for 'other' extraordinary and compelling reasons" in the Application Notes. Id. Conversely, other courts have reached this determination based on "a plain reading of § 3582(c)(1)(A) after concluding that the [relevant] policy statement no longer applies." Id. Either way, "a majority of federal district courts have found . . . that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." United States v. Perez, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) (unpublished).

United States v. Wadley, No. 2:18-cr-408-DAK, 2020 WL 3270880, at *2 (D. Utah June 17, 2020) (unpublished).

Consequently, regardless of whether the court follows the Policy Statement or simply looks to the statute, the analysis of the "extraordinary and compelling reasons" prong is essentially the same.

## ANALYSIS

The statute requires Mr. Chee to satisfy the threshold requirement that he exhaust his administrative remedies with the BOP. If he does, he must convince the court that "extraordinary and compelling reasons warrant [the requested] reduction." 18 U.S.C. § 3582(c)(1)(A)(i). If he makes that showing, the court weighs the seven factors set forth in 18 U.S.C. § 3553(a), "to the extent that they are applicable," to determine whether to grant release.

For the reasons set forth below, the court finds that Mr. Chee has established an extraordinary and compelling reason for his early release, but the court's balancing of the § 3553(a) factors weighs in favor of his continued incarceration.

1. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

On July 8, 2020, Mr. Chee submitted a request for release to the BOP where he is housed. (Suppl. Br. to Def.'s Mot. Compassionate Release at 3, ECF No. 132; Ex. A to Suppl. Br. to Def.'s Mot. Compassionate Release, ECF No. 132-1.) As of the date he filed the motion—August 10, 2020—he had not received a response. Id. Because more than thirty days have passed without response, Mr. Chee has satisfied the exhaustion requirement.

2. **EXTRAORDINARY AND COMPELLING REASONS**

Mr. Chee asserts that he "is particularly vulnerable to the COVID-19 disease, and should he become infected with the novel coronavirus, faces a very high likelihood of death or permanent bodily injury." (Def.'s Suppl. Br. at 1.) Though he does not mention whether other people at his facility, FCI Big Spring, have tested positive for COVID-19, he notes that that living and working conditions do not allow the prisoners to follow safety measures necessary to avoid infection. (Def.'s Suppl. Br. at 4–5.)

The existence of the pandemic is not by itself an extraordinary and compelling reason for release, and nor is the existence of infections in the facility where the defendant is incarcerated. United States v. Raia, 2020 WL 1647922, *2 (3d Cir. 2020); Erickson, 2020 WL 4732125, at *3. But if the defendant is at risk for severe illness, injury, or death if he contracts the virus, that is an extraordinary and compelling reason under the statute. The United States reaches the same conclusion: "If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition satisfies the

6

standard of 'extraordinary and compelling reasons.'" (Pl.'s Resp. at 4) (footnote citation omitted).)

Here, Mr. Chee's age and underlying medical conditions put him in the Center for Disease Control's (CDC) high-risk category. According to the CDC, older adults and people with certain medical conditions are at increased risk for severe illness or death. CDC, People at Increased Risk, Coronavirus Disease 2019 (COVID-19) (Aug. 10, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html. The older the person, the greater the risk. CDC, Older Adults, Coronavirus Disease 2019 (COVID-19) (Aug. 16, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. "In fact, 8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years and older." Id. In addition, a person of any age has an increased risk of severe illness if he has one or more identified chronic conditions. CDC, People with Certain Medical Conditions, Coronavirus Disease 2019 (COVID-19) (Aug. 14, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Those conditions include cancer, chronic kidney disease, chronic obstructive pulmonary disease (COPD), immunocompromised state from a solid organ transplant, obesity, serious heart conditions, sickle cell disease, and type 2 diabetes. Id. Other chronic conditions might put a person at higher risk. That category includes, for example, asthma, hypertension (high blood pressure), type 1 diabetes, and liver disease. Id.

Mr. Chee is seventy-five years old and suffers from hypertension, hyperlipidemia, liver disease, and anemia, among other health problems. (Def.'s Suppl. Br. at 1, 4.) Should he become infected with COVID-19, he faces a higher risk of serious illness based on his age. Mr. Chee's

7

hypertension and liver disease also put him at an increased risk. The court agrees with both parties that Mr. Chee has shown extraordinary and compelling reasons for a sentence reduction.

### 3. BALANCING OF § 3553(a) FACTORS

Though Mr. Chee has shown extraordinary and compelling reasons, the court finds that a balancing of the factors in § 3553(a) does not justify a reduction in sentence. The § 3553 factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established … in the guidelines …;

(5) any pertinent policy statement … issued by the Sentencing Commission …;

(6) the need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7).

The BOP Policy Statement directs the court to first apply the § 3553(a) factors and "then determine if the defendant remains a danger to the safety of any other person in the community as provided in 18 U.S.C. § 3142(g)." USSG 1B1.13(2).  § 3142(g) provides balancing factors comparable to those provided in § 3553(a), including:

    (1) the nature and circumstances of the offense charged,

    (2) the weight of the evidence against the person,

    (3) the history and characteristics of the person, including—

        (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

        (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The nature and circumstances of Mr. Chee's offense were egregious.  Mr. Chee was convicted of Aggravated Sexual Abuse While Within Indian Country for raping L.P., a physically and mentally handicapped woman. (Pl.'s Resp. at 1–2.)  Mr. Chee, a Navajo Nation medicine man, had been invited by L.P.'s grandparents to perform healing ceremonies for L.P. in their home.  L.P. has physical and mental disabilities, including partial paralysis and the mental capacity of a five-year-old.  Her grandparents trusted Mr. Chee— "everyone trusted him."

9

United States v. Chee, 514 F.3d 1106, 1118 (10th Cir. 2008). When L.P. was alone in her home, Mr. Chee raped her as she cried and tried to push him off. (Ex. 1 to First Step Act Relief Eligibility R. at ¶ 6, ECF No. 125-1.) He knew that "because of L.P.'s mental disability and his position of power within the community, the crime would be difficult to detect." Chee, 514 F.3d at 1118. This court sentenced Mr. Chee to 253 months' imprisonment after applying enhancements for use of force, a vulnerable victim, and abuse of a position of trust. Id. at 1111. Mr. Chee's sentence is within the recommended guidelines of 235 to 293 months, and the 10th Circuit Court of Appeals affirmed the application of enhancements to his sentence. Id.

Mr. Chee's current sentence reflects the seriousness of his offense and protects the public from further crimes. Mr. Chee cites his age, time served, and health problems as creating "no real risk that he would reoffend or otherwise be a danger to anyone." (Def.'s Suppl. Br. at 7.) But Mr. Chee was sixty years old when he raped L.P. and easily overpowered her. Though Mr. Chee has aged and developed health problems since his offense, the court is not convinced that there is "no real risk of recidivism." (Def's Suppl. Br. at 8.) Mr. Chee was uncooperative and guarded during a presentencing psychological evaluation, making the likelihood of future sexual offenses "difficult to predict." (Ex. 1 to First Step Act Relief Eligibility R. at ¶ 52.) He has not completed sex offender therapy because "those who actually commit rape represent a poor prognosis for treatment." Id.

Mr. Chee also points to his past criminal record in support of his release. Prior to his current conviction, he was convicted of two misdemeanors for disorderly conduct. (Def.'s Suppl. Br. at 7.) But Mr. Chee's past misdemeanors do not diminish the severe nature of the offense for which he is currently incarcerated. Nor does the fact that he was released with conditions after his arrest but before his trial. (See Def.'s Suppl. Br. at 7.)

Mr. Chee does not provide a release plan nor does he explain if he has any family or community connections that would help him refrain from committing future crimes. All Mr. Chee provides is an P.O. Box address on the Navajo Nation, where he would live upon release. (Ex. A. to Def.'s Br., ECF. No. 122-1.) Without further details about his support network, this court is not convinced that Mr. Chee poses no danger to community.

## **CONCLUSION**

After consideration of the parties' briefs and supplementary materials, the court concludes that although there are extraordinary and compelling reasons, the § 3553(a) factors weigh against Mr. Chee's release. For the foregoing reasons, Alden Harman Chee's Motion for Compassionate Release (ECF No. 122) is DENIED.

DATED this 2nd day of September, 2020.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge